STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Gulli, <u>et</u> } Docket No. 4-1-01
<u>al.</u>                           } Vtec
                                  }
Appeal of Dunnett, <u>et al.</u>   }    Docket No. 5-1-01
                                  }        Vtec

<u>Order on Pending Motions</u>

These are the remaining two appeals involving decisions of the Development Review Board (DRB) of the Town of Ludlow regarding approval of Phase I of Applicant= s Jackson Gore Project. In Docket No. 4-1-01 Vtec, Appellant Nicholas A. Gulli and a group of other Ludlow residents appealed from a November 2000 decision of the DRB approving the Final Parcel Map. In Docket No. 5-1-01 Vtec, Appellant George Dunnett and a group of other Ludlow residents appealed from the same decision. Appellants represent themselves; Appellee-Applicant Okemo Mountain, Inc. is represented by Lawrence G. Slason, Esq.; the Town is represented by J. Christopher Callahan, Esq.

Mr. Gulli has moved for the Court to rule that the appeal is properly <u>de novo</u> rather than on the record, even though the Town has adopted the Municipal Administrative Procedure Act and has voted to proceed on the record. The parties have provided the transcripts of the hearings pertaining to the November 2000 decision at issue in this appeal, and the documents constituting the application. It appears from the quality of the transcripts that the Ludlow DRB proceedings are being recorded so that the record is one from which a transcript can properly be prepared. Accordingly, the Gulli group= s motion for a ruling that the appeal is <u>de</u> <u>novo</u> is DENIED. If the appeal proceeds, it may proceed on the record.

Phase I of Applicant= s Jackson Gore Project is a mixed use recreational development, involving skiing and snowboarding facilities, and a Planned Unit Development (PUD) of 120 acres, including a 117-unit condominium hotel, associated commercial facilities, parking and infrastructure. Applicant submitted a consolidated application to the DRB requesting site plan approval, conditional use approval, PUD approval and subdivision approval of the Phase I Jackson Gore Project.

The August 8, 2000 decision approved and described the layout of the subdivision and PUD by reference to Map OA-2 contained within Exhibit 17 before the DRB and the Application for Subdivision (Exhibit 39 before the DRB) and its enlarged map (Exhibit 40 before the DRB). See pp. 39 through 41 of the Notice of Decision found in Exhibit C to the present motions. As a condition to the approval in the August 8, 2000 decision, the DRB required Applicant to submit for later DRB approval a A Final Parcel Map@ showing the location of the acreages already approved in the August 2000 decision as the 120-acre PUD, within which the August 2000 approval designated in its written description 48.84 acres of land for accessory uses and 71.16 acres of land for open space, of which 20 acres are unrestricted land and 51.16 acres of land are to contain trails, paths and picnic areas. In the latter area, the August 2000 decision required Appellee-Applicant to show the location of walking trails, cross-country ski trails, bike paths and picnic areas, with access directly from the so-called A day use@ parking lots. Appellee-Applicant submitted a A Final Parcel Map@ dated October 4, 2000; the DRB held two hearings on the Final Parcel Map and took action to approve this map on November 27 (or 30), 2000, the decision on appeal in these two appeals..

The Court has already ruled that these two appeals do not reopen any of the issues in the August 2000 permit decision. The scope of these appeals is limited by the scope of the November 2000 decision appealed from. It is apparent from a close reading of the August 2000 decision as found in the consolidated decision, Exhibit C, that the DRB took all of its required approval action in the August 2000 proceedings. However, because its approval contained a lengthy narrative imposing conditions on Appellee-Applicant= s proposal, the DRB took the reasonable additional step of having Appellee-Applicant submit a Final Parcel Map showing not only the project as applied for, but with all of the DRB= s conditions imposed. Therefore, the only questions that could be before the Court in these appeals would relate to whether Appellee-Applicant had accurately rendered the DRB= s decision into map form.

Appellee-Applicant has moved to dismiss all the questions in the Statements of Questions for both appeals, as beyond the scope of these limited appeals. In particular, Appellee-Applicant argues that issues relating to density calculation, modification of building height, the DRB= s authority in connection with PUD applications, designation of land uses, and determinations relating to the specific acreage dedicated to accessory lands, restricted lands, and unrestricted lands, were all decided in the August 2000 permit decision and hence are not

within the scope of the present appeal. Appellee-Applicant is correct, and its motion to dismiss the questions, and hence the appeals, must be granted.

The Appellant groups argue that the DRB could not approve a plat under ' 380.3 of the Zoning Bylaws and 24 V.S.A. ' 4407(12) and ' 4414 without holding a public hearing on the plat and without previously having given the applicant preliminary approval to authorize the preparation of the plat for the public hearing. First, ' 4414 is permissive regarding preliminary plat approval. A DRB may grant preliminary approval, but is not required to go through that step prior to considering final plat approval of a subdivision, either alone or in conjunction with approval of a PUD.

However, much more importantly, the Appellant groups are mistaken in thinking that the Final Parcel Map was the final subdivision plat. Rather, the August 2000 decision refers to Exhibit 40 before the DRB as the final plat being considered by the DRB in that decision, and refers to Map OA-2 (in Exhibit 17 before the DRB) as the plan of the PUD.

The Final Parcel Map was simply a rendering in map display form of all the conditions and requirements imposed in the August 2000 decision. While the DRB may have imported some confusion into this process by requiring that it be submitted to the DRB A for approval,@ it is evident from reading the complete DRB decision and its associated voluminous exhibits that the submission for approval was simply so that the DRB could determine whether its decision had been accurately rendered into map display form. The submission of the Final Parcel Map did not reopen the already-approved elements of the application on which the DRB had made elaborate and careful findings and for which it had imposed detailed requirements and conditions.

Accordingly, the questions presented in both Appellant groups= Statements of Questions are beyond the scope of these appeals, and are hereby dismissed. The appeals must therefore be and they hereby are DISMISSED. If Appellee-Applicant wishes to prepare a separate judgment order pursuant to the amendments to V.R.C.P. 58, it may do so.

Done at Barre, Vermont, this 12th day of December, 2001.

_____

Merideth Wright
Environmental Judge